United States District Court
Central District of Illinois

Jefferson D. Callaghan,
    Plaintiff,

v.

Roger E. Walker, Jr., et al
    Defendants

1:08-cv-01144-HAB-JAG

Hearing Requested

## Motion for Emergency Rule 65 order

NOW COMES, the Plaintiff, Jefferson D Callaghan, requesting this Honorable Court to grant an Emergency Rule 65 order, enjoining or restraining the Defendants and in support thereof States:

1. The Plaintiff is currently housed at the Pontiac Correctional Center in ~~[redacted]~~ Pontiac, IL.

2. That for a majority of the Plaintiff's sentence he has been Classified and Housed in Protective Custody due to various verified threats. (see Attachments)

3. That the Plaintiff recieved a disciplinary report shortly after Reporting the events that led to this action

4. That after the Plaintiff's release from Segregation he was place on another punitive Segregation Gallery in retaliation for filing this action rather than being placed in South Protective Custody Unit, and was told by Warden Mathy, that he was awaiting transfer.

5. That the other inmates housed on that gallery are not protective custody inmates and have direct contact with the Plaintiff, placing the Plaintiff at risk of serious harm.

6. The Plaintiff was placed into Protective Custody at Pontiac Correctional Center in April of 2003 and in December of 2003, was interviewed by Assistant U.S. Attorney John Durham and Agents of the Federal Bureau of Investigation regarding the investigation of Corrupt Federal officials and various Organized Crime/Gang figures.

7. As a result of the Information obtained during the Dec. 2003 Interview, the Asst. U.S. Attorney contacted Warden Mote, who was then the Warden at Pontiac and informed him that the plaintiff was to remain in protective custody and that a notation should be made in the Plaintiff's Master file Record barring any transfers to Stateville Correctional Center, due to its proximity to the Chicago Area and the possible relationships between Guards employed at Stateville and federal officials being investigated.

8. That the Plaintiff has continued to cooperate with the F.B.I. and was told that if he had any problem with his protection needs to notify the prisons Internal Affairs unit and ask them to Contact the U.S. Marshal Responsible for witness protection at # (202) 307-9862. The plaintiff has requested that prison officials to Contact Witness protection regarding his Protective Custody Status, but was Ignored. When the Plaintiff asked Corrections Counselor McNabb, why it was taking so long place the Plaintiff he stated that the Administration was hoping that the Plaintiff would sign-out of Protective Custody and waive any right to protection.

2.

9. That the Plaintiff was attacked on two Seperate occassions while at Stateville, after reporting the Sexual Assaults committed by Defendant Mueller out of retaliation, when Warden Terry McCann Ordered 4 Correctional officers to attack and beat the Plaintiff. The Stateville beatings and retaliation were not alleged in the Plaintiff's original Complaint, because those claims have not yet been fully exausted, but the Plaintiff has been interviewed by investigators in July of 2008.

10. That Two of the Defendants are still actively employed at the Menard Correctional Center as are members of their familys.

11. That the Plaintiff will be placed at substantial Risk of Serious harm or Retaliation if transferred to the Stateville Correctional or the Menard Correctional Center, and the Plaintiff is currently in danger in his current housing assignment at Pontiac Correctional Center by not being placed in the South House Protective Custody Unit and being put into direct Contact with other inmates who are not Approved protective Custody Status.

12. In addition to the Retalitory steps taken by the Defendants as listed above, the Plaintiffs Property (Television, Typewriter and lawbooks) have been witheld from him, even though he is under no Disciplinary restrictions, these are Just more attempts by the Defendants to hinder and discourage the plaintiff's Litigation efforts.

3.

13. That the Defendants would incur no additional costs or damages, by being enjoined or restrained, therefore no security should be necessary.

Therefore, for the reason set forth in paragraphs 1-13 of this motion, the plaintiff prays for the following:

A. That the Defendant Roger E. Walker be restrained or enjoined from transferring the Plaintiff to the Menard or Stateville Correctional Centers and Place the Plaintiff in the Approved Protective Custody Unit (South House) at Pontiac Correctional Center and return his property to him.

B. Grant any further relief.

C. Schedule a Hearing at the earliest possible time.

Respectfully Submitted

Dated. 6-28-08

Jefferson D. Callaghan

4.

Attachment "A"

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Protective Custody Status**
<u>Stateville</u> Correctional Center         X LE 04

Committed Person's Request for Protective Custody (check one): ☒ Placement    or    ☐ Release

I, <u>Jefferson Callaghan</u>   <u>B-81841</u>   <u>X House</u> hereby request to be
   Print Committed Person's Name      ID#           Cell/Unit

placed in or released from protective custody status for the following reasons (provide specific reason, including names, nicknames, and cell numbers of enemies etc.). I understand I will remain in protective custody status until voluntarily released or until all administrative remedies sought have been exhausted.

I have Problems with the Vice Lords and Latin Kings that originated here at Stateville and Menard. In addition to that I am an federal informant F.B.I File # 66-HQ-A1251101. I was told that I would not be Housed in Stateville because of my Informant status and the Prisons Proximity to Chicago.

<u>Jefferson Callaghan  B-81841</u>       <u>4 / 21 / 05</u>
Committed Person's Signature                Date

---

**Complete for Initial Placement:**

The committed person was initially placed in protective custody status on ___/___/___ at ___ a.m./p.m.
                                                                          Date                Time
☐ Shift Commander or Duty Administrative Officer notified:

_____   ___/___/___   ___ a.m./p.m.
Name of Person Notified         Date          Time

_____   _____
Print Name of Staff               Signature of Staff

---

**Facility Decision:**
                ☐ release from
Your request for ☐ placement in or protective custody was reviewed by the facility on ___/___/___ and it was:
                                                                              (Date)
☒ Approved.
☐ Denied. You may immediately grieve this decision to the Administrative Review Board in accordance with DR 501 by so indicating below. If grieved, you will remain in protective custody status until a final decision is made by the Director.

<u>D Battaglia</u>                             ___/___/___
Chief Administrative Officer's Signature        Date

---

**Offender's Acknowledgement:**
Please acknowledge receipt of this decision by signing below and indicating whether or not you wish to grieve this decision.
☒ I hereby grieve this decision to the Administrative Review Board. I understand the administration will forward this grievance to the Administrative Review Board; no other grievance form need be filed by me.
☐ I am not grieving release from protective custody status.

<u>Jefferson Callaghan  B-81841</u>       <u>4 / 21 / 05</u>
Committed Person's Signature                Date

---

This decision was served to committed person by:

Shirley J. Roberts          <u>Shirley J. Roberts</u>        <u>05 / 30 / 05</u>
Print Name of Staff             Signature of Staff              Date

☐ Committed person refused to sign. (Forward to the Administrative Review Board for final review and the Director's determination.)

NOTE: If grieved, the administration shall forward a copy of this form to the Administrative Review Board for direct review, attaching a copy of Protective Custody Status Review.

Distribution: Master File; Administrative Review Board, if applicable;
              Committed Person                           Printed on Recycled Paper       DOC 0054 (Eff. 10/2001)

AFFIDAVIT OF:

**JEFFERSON DAVIS CALLAGHAN**      )
STATEVILLE CORRECTIONAL CTR.  )
JOLIET, ILLINOIS, 60434              )      F.B.I. FILE NO. 66-HQ-A1251101

---

## A F F I D A V I T

I, **JEFFERSON DAVIS CALLAGHAN**, BEING FIRST DULY SWORN UPON MY OATH DEPOSE AND STATE THAT THE FOLLOWING MATTERS ARE BOTH TRUE AND CORRECT MADE UPON PERSONAL KNOWLEDGE AND BELIEF, AND IF CALLED AS A WITNESS, I AM COMPETENT TO TESTIFY THERETO:

\* \* \* \*

IN DECEMBER OF 2003, I WAS INTERVIEWED BY **U.S.ATTORNEY JOHN DURHAM AND AGENTS OF THE FEDERAL BUREAU OF INVESTIGATION.**

THE PURPOSE OF THIS INTERVIEW WAS TO OBTAIN INFORMATION THAT I POSSESSED ABOUT THE INVESTIGATION OF JAMES BULGER AND VARIOUS INDIVIDUALS EMPLOYED BY THE FEDERAL BUREAU OF INVESTIGATIONS, U.S. DRUG ENFORCEMENT AGENCY, U.S. MARSHALS SERVICE, INTERPOL AND OTHER STATE OFFICIALS.

I PROCEEDED TO TELL THEM THE NAMES, DATES AND LOCATIONS OF MEETINGS WHERE I DELIVERED CASH PAYMENTS ON BEHALF OF JAMES BULGER AND MICHEAL O'NEIL.

I SUPPLIED THIS INFORMATION AFTER ATTORNEY DURHAN AGREED TO FURNISH ME WITH COPIES OF SURVAILANCE REPORTS HE OBTAINED FROM THE U.S. DRUG ENFORCEMENT AGENCY.

I FIRST BECAME AWARE OF THE SURVAILANCE WHEN D.E.A. AGENTS MORELLI AND SANTOS FROM BOSTON MA. INTERVIEWED ME AT THE STATEVILLE CORRECTIONAL CENTER IN JOLIET, ILLINOIS AND WAS THREATENED BY THE AGENTS AND TOLD TO KEEP MY MOUTH SHUT.

AFTER THE INTERVIEW I CONTACTED THE U.S. HOUSE COMMITTEE ON GOVERNMENT REFORM AND TOLD THEM ABOUT THE THREATSAND PASSED ON THE SAME INFORMATION I GAVE TO AGENTS MORELLI AND SANTOS.

(CONTINUATION OF AFFIDAVIT OF
JEFFERSON DAVIS CALLAGHAN)


- AFTER WRITING TO THE COMMITTEE I WAS CONTACTED BY AN AIDE NAMED ANNE MARIE TURNER BY TELEPHONE AND ASKED IF I WOULD AGREE TO MEET WITH ASST. U.S. ATTORNEY JOHN DURHAM, TO WHICH I SAID YES.

**THE FOLLOWING INFORMATION WAS RELAYED TO ATTORNEY JOHN DURHAM BY ME:**

IN AUGUST OF 1998, I WAS PRESENT AT A MEETING BETWEEN JAMES BULGER, DON STERN, GEORGE FESTA, MICHEAL O'NEIL AND MYSELF OUTSIDE OF THE GREENHOUSE RESTURANT IN BOSTON MA. THE TOPIC OF DISCUSSION WAS THE INVESTIGATION OF THE DRUG BUSINESS CONDUCTED BY O'NEIL. STERN AND FESTA ASSURED BULGER THAT THERE WOULD BE NO FURTHER INVESTIGATION OF O'NEIL AND THAT THERE WOULD BE NO RECORD OF A CONNECTION BETWEEN BULGER AND O'NEIL.

A FEW DAYS LATER I WAS ASKED BY BULGER TO GO DOWN TO WASHINGTON D.C. TO DELIVER CASH TO DEPUTY ASSISTANT DIRECTORS TOM KNEIR AND NEIL GALLAGHER. THE MEETING WAS VERY SHORT. I WAS MET AT THE CORNER OF 19TH ST. AND POTOMAC, NEAR D.C. GENERAL HOSPITAL WHERE I DELIVERED TO EACH AN ENVELOPE OF CASH AND LEFT.

LATER THAT DAY I ALSO MET WITH MATT QUINN FROM INTERPOL AND EUGENE COON OF THE U.S. MARSHALS SERVICE WHO GAVE ME AN ENVELOPE CONTAINING A BIRTH CERTIFICATE AND A SOCIAL SECURITY CARD FOR BULGER TO USE TO OBTAIN IDENTIFICATION CARDS. I THEN RETURNED TO BOSTON, GAVE THE ENVELOPE TO BULGER AN RETURNED TO MY HOME IN NEW HAMPSHIRE.

A WEEK LATER I WAS ASKED TO DELIVER A SHIPMENT OF THE DRUG ECTASY TO AARON MCLUSKY AT THE ABBY PUB IN CHICAGO AND MAKE A PAYMENT TO JOE VANACORA, S/A D.E.A. WHICH I DID. I THEN RETURNED HOME.

IN SEPTEMBER OF 1998 MY PAROLE WAS VIOLATED AND I HAD TO RETURN TO N.H. STATE PRISON UNTIL JUNE OF 1999.

UPON MY RELEASE I CONTACTED MICHEAL O'NEIL AND BEGAN WORKING FOR HIM AGAIN. THE LAST THING I DID FOR O'NEIL WAS ANOTHER DELIVERY OF DRUGS TO GABRIEL'S RESTURANT IN HIGHWOOD ILLINOIS. I WAS ARRESTED IN DUQUOIN ILLINOIS A FEW WEEKS LATER.

(CONTINUATION OF AFFIDAVIT OF
JEFFERSON DAVIS CALLAGHAN)

ON THE EVENING OF SEPTEMBER 10TH UNTIL EARLY MORNING OF THE 11TH. I MET WITH GABRIEL VITI AND JOE VANACORA AT VITI'S RESTURANT IN HIGHWOOD IL. TO DISCUSS DRUG BUSINESS. BEFORE LEAVING I PAID VANACORA $10,000 IN CASH ON BEHALF OF MICHEAL O'NEIL. I LEFT THE RESTURANT AND RETURNED TO DUQUOIN. I WAS ARRESTED BY THE DUQUOIN POLICE DEPARTMENT ON THE MORNING OF THE 13TH.

*************************************************************************

END OF AFFIDAVIT

DATED: 6-24-05

SIGNED: _____
JEFFERSON D. CALLAGHAN

SUBSCRIBED AND SWORN TO
BEFORE ME ON THE 24th DAY
OF June, 2005

_____
NOTARY PUBLIC

"OFFICIAL SEAL"
Phyllis Baker
Notary Public, State of Illinois
My Commission Exp. 01/21/2007

3.

# FBI TEN MOST WANTED FUGITIVE

RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) - MURDER (18 COUNTS), CONSPIRACY TO COMMIT MURDER, CONSPIRACY TO COMMIT EXTORTION, NARCOTICS DISTRIBUTION, CONSPIRACY TO COMMIT MONEY LAUNDERING; EXTORTION; MONEY LAUNDERING

## JAMES J. BULGER





Photograph taken in 1994    Photograph taken in 1994    Photograph retouched in 2000

Aliases: Thomas F. Baxter, Mark Shapeton, Jimmy Bulger, James Joseph Bulger, James J. Bulger, Jr., James Joseph Bulger, Jr., Tom Harris, Tom Marshall, "Whitey"

## DESCRIPTION

| | | | |
|---|---|---|---|
| Date of Birth: | September 3, 1929 | Hair: | White/Silver |
| Place of Birth: | Boston, Massachusetts | Eyes: | Blue |
| Height: | 5'7" to 5'9" | Complexion: | Light |
| Weight: | 150 to 160 pounds | Sex: | Male |
| Build: | Medium | Race: | White |
| Occupation: | Unknown | Nationality: | American |
| Scars and Marks: | None known | | |

Remarks: Bulger is an avid reader with an interest in history. He is known to frequent libraries and historic sites. Bulger is currently on the heart medication Atenolol (50 mg) and maintains his physical fitness by walking on beaches and in parks with his female companion, Catherine Elizabeth Greig. Bulger and Greig love animals and may frequent animal shelters. Bulger has been known to alter his appearance through the use of disguises. He has traveled extensively throughout the United States, Europe, Canada, and Mexico.

## CAUTION

JAMES J. BULGER IS BEING SOUGHT FOR HIS ROLE IN NUMEROUS MURDERS COMMITTED FROM THE EARLY 1970s THROUGH THE MID-1980s IN CONNECTION WITH HIS LEADERSHIP OF AN ORGANIZED CRIME GROUP THAT ALLEGEDLY CONTROLLED EXTORTION, DRUG DEALS, AND OTHER ILLEGAL ACTIVITIES IN THE BOSTON, MASSACHUSETTS, AREA. HE HAS A VIOLENT TEMPER AND IS KNOWN TO CARRY A KNIFE AT ALL TIMES.

CONSIDERED ARMED AND EXTREMELY DANGEROUS

IF YOU HAVE ANY INFORMATION CONCERNING THIS PERSON, PLEASE CONTACT YOUR LOCAL FBI OFFICE OR THE NEAREST U.S. EMBASSY OR CONSULATE.

## REWARD

The FBI is offering a $1,000,000 reward for information leading directly to the arrest of James J. Bulger.

www.fbi.gov

August 1999
Poster Revised November 2000

STATE OF ILLINOIS,            )

PERRY COUNTY                  )        NO. 99-CF-101
                              )

# AFFIDAVIT

I, JEFFERSON DAVIS CALLAGHAN, BEING FIRST DULY SWORN UPON MY OATH DEPOSE AND STATE THAT THEFOLLOWING MATTERS ARE BOTH TRUE AND CORRECT MADE UPON PERSONAL KNOWLEDGE AND BELIEF, AND IF CALLED AS A WITNESS, I AM COMPETENT TO TESTIFY THERETO:

* * * *

IN DECEMBER OF 2003, I WAS INTERVIEWED AT THE PONTIAC CORRECTIONAL CENTER, BY ASSISTANT U.S. ATTORNEY JOHN DURHAM IN CONNECTION WITH A FEDERAL INVESTIGATION OF AGENTS ACCUSED OF TAKING MONEY.

DURING THE COURSE OF THE INTERWIEW I WAS SHOWN SURVAILANCE REPORTS AND PHOTOGRAPHS TAKEN BY AGENTS OF THE U.S. DRUG ENFORCEMENT AGENCY. NOTATIONS IN THE REPORTS INDICATE THAT ON SEPTEMBER 10, 1999 I WAS OBSERVED ENTERING GABRIELS RESTURANT AND MET WITH GABRIEL VITI AND JOSEPH VANACORA. VANACORA IS IDENTIFIED AS A SPECIAL AGENT OF THE D.E.A. IN CHICAGO IL. THE REPORTS INDICATE THAT I LEFT THE MEETING SHORTLY AFTER 3 AM ON SEPTEMBER 11, 1999.

I ADMITTED TO BEING PRESENT AT THE MEETING AFTER VIEWING THE REPORTS MYSELF AND INFORMED ATTORNEY DURHAM THAT I HAD MADE A CASH PAYMENT TO VANACORA AS WELL AS OTHER AGENTS.

THE INTERVIEW WAS ARRANGED BY ANNE MARIE TURNER, WHO WAS AN AIDE TO SENATOR DAN BURTON, CHAIRMAN OF THE HOUSE COMMITTEE ON GOVERNMENT REFORM.

I WAS NOT AWARE OF ANY SURVAILANCE UNTIL DECEMBER OF 2003 AND COULD NOT HAVE KNOWN, BUT THERE WERE NOTATIONS IN THE REPORTS THAT SHOW THAT THE STATES ATTORNEY'S OFFICE WAS CONTACTED ON SEPTEMBER 16, 1999 AND INFORMED OF THE SURVAILANCE.

SUBSCRIBED AND SWORN TO BEFORE ME ON THE 14TH DAY OF June, 2005

NOTARY "OFFICIAL SEAL"
Phyllis Baker
Notary Public, State of Illinois
My Commission Exp. 01/21/2007

1. OF 1.

RESPECTFULLY SUBMITTED,

JEFFERSON D. CALLAGHAN

| DATE | DESCRIPTION OF EVENT |
|---|---|
| AUG. 1998 | MEETING BETWEEN, BULGER, STERN, FESTA, O'NEIL AND MYSELF. |
| AUG. 1998 | PAYMENT TO KNEIR, GALLAGHER, AND QUINN (INTERPOL) |
| AUG. 1998 | DROP AT THE ABBY (CHICAGO), PAYMENT TO VANACORA |
| SEPT. 1998 | PAROLE VIOLATED. |
| JUNE 1999 | RELEASED. MET WITH O'NEIL AND SIKELLIS |
| JULY 1999 | DROP AT VITI'S (CHICAGO), MET MCKEE IN DUQUOIN |
| SEPT. 1999 | ARRESTED IN DUQUOIN |

---

| | |
|---|---|
| JOE VANACORA- | SPECIAL AGENT IN CHARGE, (D.E.A. CHICAGO) |
| DON STERN- | U.S. ATTORNEY (BOSTON) - 617-223-9481 |
| GEORGE FESTA- | SPECIAL AGENT IN CHARGE, D.E.A. (BOSTON) |
| TOM KNEIR- | DEPUTY ASSISTANT DIRECTOR, F.B.I. (WASH. DC.) |
| NEIL GALLAGHER- | DEPUTY ASSISTANT DIRECTOR, F.B.I. (WASH. DC.) |
| MATT QUINN- | ASSISTANT CHIEF, INTERPOL, (WASH. DC.) |
| BOB SIKELLIS- | INVESTIGATOR, MASS. A.G. |

---

| DATE | DESCRIPTION OF EVENT |
|---|---|
| FEB. 2002 | INTERVIEWED BY, SPECIAL AGENT MORELLI AND TASK FORCE AGENT SANTOS. (D.E.A. BOSTON) |
| NOV. 2003 | CONTACTED BY ANNE MARIE TURNER, FROM HOUSE COMMITTEE ON GOVERNMENT REFORM. |
| DEC. 2003 | INTERVIEWED BY ASSISTANT U.S. ATTORNEY JOHN DURHAM (CONN.) |

CONTACTS

ROGER WHEELER- S.A.C/F.B.I./MINN. 612-376-3200
LARRY BRUBAKER-S.A./FBI/MINN

DALE BARNESS- DET.LT./MINN. P.D.
BARNE MARTINSON DET.SGT./MINN. P.D.

GARY SCIAFFO-DET./MIA.BCH.P.D.
J.SANCHES    DET./MIA.BCH.P.D.

RAY FALLON-S.A./F.B.I./BOSTON 617-742-5533

RICHARD JOYCE-S.A./D.E.A/ROCKFORD,IL, 815-987-4494
CHARLIE WEST-S.A./D.E.A./CHI.IL.    312-353-7875

NANCY MCGILLIVRAY-U.S.M./BOSTON, 617-223-9721
RAY GAGNON-U.S.M./CONCORD,N.H. 603-225-1632
EUGENE COON-U.S.M./WIT.PRO./D.C.202-307-9862

BILL MITCHELL-D.E.A./S.A.C./MIA.FL. 305-590-4870